1   EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP
    Eric Danoff (State Bar #60915)
2   Katharine Essick (State Bar #219426)
    49 Stevenson Street, Suite 400
3   San Francisco, CA  94105
    Telephone:    (415) 227-9455
4   Facsimile:    (415) 227-4255
    E-Mail:        edanoff@edptlaw.com
5                  kessick@edptlaw.com

6   Attorneys for Defendant Horizon Lines, LLC

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10  LORRAINE FERGUSON,                    Case No.:  CV 11 03391 MEJ

11           Plaintiff,                   **JOINT STATEMENT OF UNDISPUTED
                                          AND DISPUTED FACTS RE:
12      vs.                               DEFENDANT HORIZON LINES, LLC'S
                                          MOTION FOR SUMMARY
13  HORIZON LINES, INC.; M/V HORIZON      JUDGMENT AND ALTERNATIVE
    ENTERPRISE, its engines, tackle,      MOTION FOR PARTIAL SUMMARY
14  equipment, furnishings, and machinery, *in*   JUDGMENT**
    *rem*; ANDREI A. TRETYAK,
15
             Defendants,
16                                        Hearing Date:   July 12, 2012
                                          Hearing Time:  10:00 a.m.
17                                        Courtroom:     B, 15^(th) Fl.

18  _____   Hon. Maria-Elena James

19  AND RELATED CROSS-CLAIM.

20

21

22

23

24

25

26

27

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 1 -

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.: CV-11-03391-MEJ

1    Defendant Horizon Lines, LLC ("Horizon") and plaintiff Lorraine Ferguson

2  ("Ferguson") submit their Joint Statement of Undisputed and Disputed Facts that accompanies

3  Horizon's Motion for Summary Judgment and Alternative Motion for Partial Summary

4  Judgment.

5    Horizon asserts all Facts stated herein.  Facts which Plaintiff does not dispute are marked

6  "Undisputed."  Facts which Plaintiff does dispute are marked "Disputed."

7    Reference to an "Exhibit" or "Ex." are to exhibits (including Declarations, Deposition

8  Testimony, and Interrogatory Responses) attached to the Declaration of Katharine Essick.

9  DATED:                    EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP
                                       Eric Danoff
10                                      Katharine Essick

11
                                   By_____/s/Katharine Essick_____
12                                         Katharine Essick
                                   Attorneys for Defendant
13                                 HORIZON LINES, LLC

14 DATED:                     BIRNBERG & ASSOCIATES
15

16
                                   By_____/s/Cory A. Birnberg_____
17                                         Cory A. Birnberg
                                   Attorneys for Plaintiff
18                                 LORRAINE FERGUSON

19

20                                 Certification of Signatures

21    I attest that the content of this document is acceptable to all persons above, who were

22 required to sign it.

23                                      /s/Katharine Essick_____
24                                      Katharine Essick

25

26

27

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 2 -

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

JOINT STATEMENT OF UNDISPUTED FACTS

1.      Defendant Horizon Lines, LLC ("Horizon") operates the vessel HORIZON ENTERPRISE ("the ENTERPRISE"), including on November 24, 2010.

> Ex. A, Declaration of Michael Bohlman ("Bohlman Decl."), ¶3;
>
> Ex. B, Declaration of Ronald M. Radicali ("Radicali Decl."), ¶2.
>
> (Undisputed.)

2.      The ENTERPRISE trades between Hawaii and the west Coast of the United States, and one of the vessel's regular ports of call is Oakland, California.

> Ex. B, Radicali Decl., ¶3.
>
> (Undisputed.)

3.      The ENTERPRISE regularly docks at a terminal in Oakland run by Ports America, which has its own employees, including longshoremen and security guards.

> Ex. B, Radicali Decl., ¶3.
>
> (Undisputed.)

4.      Ports America does not employ the crews of the Horizon vessels that call in the Port of Oakland, and Horizon does not employ the shoreside workers who work at the terminal.

> Ex. B, Radicali Decl., ¶4.
>
> (Undisputed.)

5.      Whenever the ENTERPRISE visits a terminal, Capt. Radicali has routinely provided, and continues to provide, the terminal operator with the vessel's crew list.

> Ex. B, Radicali Decl, ¶5.
>
> (Disputed.)

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

6.      On November 24, 2010, Plaintiff Lorraine Ferguson ("Plaintiff") was working as a security guard at the East Gate of the Ports America terminal in the port of Oakland.

Ex. C, Highlighted Excerpts of Deposition of Plaintiff Lorraine Ferguson dated March 16, 2012 ("Depo. Plf."), at 46-47.

(Undisputed.)

7.      Ports America has regularly employed Plaintiff as a terminal security guard since 2008.

Ex. C, Depo. Plf., at 21, 22.

(Undisputed.)

8.      According to Plaintiff, she receives a list of crew members from ships calling at the Ports America terminal, so that if the crew members leave the terminal, they can come back in to get back onto their ship.

Ex. C, Depo. Plf., at 50.

(Undisputed.)

9.      According to Plaintiff, a crew member who exited the Ports America terminal had to re-enter at the East Gate, where Plaintiff would allow crew members whose names were on the list to enter the terminal upon presentation of proper identification.

Ex. C, Depo. Plf., at 47-48.

(Undisputed.)

10.     On November 24, 2010, the ENTERPRISE was calling at the Ports America terminal and, at the East Gate, Plaintiff had a list of crew members of the ENTERPRISE.

Ex. C, Depo. Plf., at 50-51.

- 4 -

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

1      (Undisputed.)

2      11.      At her deposition, Plaintiff testified that on November 24, 2010, while she

3   was on duty at the East Gate, Andrei Tretyak entered into the Ports America terminal by the East

4   Gate and said "Hello" to Plaintiff; she answered "Hello.  May I please see your identification,"

5   and Tretyak presented his identification.

6      Ex. C, Depo. Plf., at 63.

7      (Undisputed.)

8

9      12.      Plaintiff testified that she was checking for Tretyak's name on the list in

10   the East Gate guard booth when she noticed Tretyak in the doorway of the guard booth.

11      Ex. C, Depo. Plf., at 63.

12      (Undisputed.)

13

14      13.      Plaintiff testified that Tretyak then "started saying things like you're so

15   beautiful, I like your earrings" and she answered, "thank you, sir, but I need to check and see if

16   you're on the list."

17      Ex. C, Depo. Plf., at 64.

18      (Undisputed.)

19

20      14.      Plaintiff testified that Tretyak then "kind of pushed me, blocked me and

21   barricaded me inside the booth and kept saying you're so beautiful, and he pulled his cell phone

22   out.  He said, can I have you're phone number" and Plaintiff answered, "I need you to need to

23   step back and please don't touch me" and "I'm married," and she also pushed Treytak back.

24      Ex. C, Depo. Plf., at 64-65.

25      (Undisputed.)

26   //

27   //

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

15.     Plaintiff testified that Tretyak then "used his body to push me" and "barricade me" into the booth and "started kissing on my cheek and my neck" and Plaintiff covered her breasts with her hands and used her body to try to push Tretyak out of the booth.

Ex. C, Depo. Plf., at 65.

(Undisputed.)

16.     Plaintiff testified that she called for help to her co-worker, shuttle driver Brett Lee, who came to the booth and moved Tretyak so that Plaintiff was able to get out of the booth.

Ex. C, Depo. Plf., at 65.

(Undisputed.)

17.     Plaintiff testified that she then ran away from the booth with Tretyak chasing her.

Ex. C, Depo. Plf., at 65.

(Undisputed.)

18.     Plaintiff testified that, after running about a half block, she stopped, and Brett Lee and her supervisor (Damon Gomes) put Tretyak into the shuttle, which then drove off in the direction of the ENTERPRISE.

Ex. C, Depo. Plf., at 70, 71.

(Undisputed.)

19A.    At the time of this incident, Plaintiff did not know any of the ENTERPRISE crewmembers by name.

Ex. C, Depo. Plf., at 51.

(Undisputed.)

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

19B.    To her knowledge Plaintiff had not ever seen Tretyak before this incident.

Ex. C, Depo. Plf, at 72.

(Undisputed.)

20.    In support of its Motion, Horizon offers the Declarations of Michael T. Bohlman, Michael W. Bacher, James Baldwin, James A. Carbone, Norbert Chaudhary, Kent R. Flick, Thomas MacKay, Jr., Douglas A. Nemeth, Errol Pak, Ronald M. Radicali, Thomas M. Ryan, and Michael Smith.

*See* Declaration of Katharine Essick (Declarations attached as Exhibits).

(Undisputed.)

21.    Michael T. Bohlman has been Horizon's Director of Marine Services since August 1996.

Ex. A, Bohlman Decl., ¶2.

(Undisputed.)

22.    Bohlman's responsibilities as Director of Marine Services have always included participating, on Horizon's behalf, in collective bargaining negotiations with seafarers' unions, implementing the collective bargaining agreements, managing the fleet's compliance with U.S. Coast Guard rules and regulations, and managing and implementing the Safety Management System (SMS) for Horizon's fleet.

Ex. A, Bohlman Decl., ¶2.

(Disputed.)

//

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 7 -

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

23.     Michael W. Bacher, James A. Carbone, Kent R. Flick, Thomas MacKay, Jr., Ronald M. Radicali, and Michael Smith all served as Masters (Captains) with Tretyak on Horizon-operated vessels.

Ex. B, Radicali Decl., ¶¶2, 9;

Ex. D, Declaration of Michael W. Bacher ("Bacher Decl."), ¶¶4, 5;

Ex. E, Declaration of James A. Carbone ("Carbone Decl."), ¶4;

Ex. F, Declaration of Kent R. Flick ("Flick Decl.), ¶5;

Ex. G, Declaration of Thomas MacKay, Jr. ("MacKay Decl."), ¶2, 5;

Ex. H, Declaration of Michael Smith ("Smith Decl."), ¶4.

(Undisputed.)

24.     Douglas A. Nemeth and Thomas M. Ryan served as Chief Mates with Tretyak on Horizon-operated vessels.

Ex. I, Declaration of Douglas A. Nemeth ("Nemeth Decl."), ¶3;

Ex. J, Declaration of Thomas M. Ryan ("Ryan Decl."), ¶3, 9.

(Undisputed.)

25.     James Baldwin, Norbert Chaudhary, and Errol Pak served as both Chief Mates and Masters with Tretyak on Horizon-operated vessels.

Ex. K, Declaration of James Baldwin ("Baldwin Decl."), ¶3;

Ex. L, Declaration of Norbert Chaudhary ("Chaudhary Decl."), ¶3; and

Ex. M, Declaration of Errol Pak ("Pak Decl."), ¶3.

(Undisputed.)

//

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

26.     According to the records of Horizon Lines, LLC ("Horizon"), Horizon employed Andrei Tretyak as an Able Seaman ("AB") on Horizon-operated vessels as follows:

| Ship | Date On | Date Off |
|------|---------|----------|
| USNS JOHN MCDONNELL | 9/1/2005 | 12/27/2005 |
| HORIZON HAWK | 3/2/2007 | 6/11/2007 |
| HORIZON HAWK | 7/17/2007 | 10/29/2007 |
| HORIZON ENTERPRISE | 5/27/2009 | 9/29/2009 |
| HORIZON ENTERPRISE | 12/9/2009 | 2/16/2010 |
| HORIZON ENTERPRISE | 3/17/2010 | 7/20/2010 |
| HORIZON ENTERPRISE | 9/20/2010 | 1/16/2011 |

Ex. A, Bohlman Decl., ¶3.

(Undisputed.)

27.     Horizon's process of hiring Tretyak, or other mariners, to work on these ships is not the same as the process that most employers use to hire employees to work in offices, that is, by calling for resumes and then reviewing and interviewing applicants.

Ex. A, Bohlman Decl., ¶4.

(Disputed.)

28.     Tretyak is a member of the Seafarers International Union ("SIU"), a merchant mariners' union that has entered into a series of collective bargaining agreements with the SIU for the SIU to provide Horizon with unlicensed personnel ("ratings") to work as crew members on Horizon's ships.

Ex. A, Bohlman Decl., ¶4.

(Undisputed.)

//

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

29.     The manning of Horizon's vessels is governed by the Shipping Rules that are attached to each successive collective bargaining agreement, including the collective bargaining agreements that were in effect when Horizon hired Tretyak to work on Horizon-operated vessels.

Ex. A, Bohlman Decl., ¶4a.

(Undisputed.)

30.     Ratings that are covered by the Shipping Rules include "Able Seamen" ("ABs") such as Mr. Tretyak, who work in the deck departments of ships.

Ex. A, Bohlman Decl., ¶4b.

(Undisputed.)

31.     The position of the AB and other unlicensed personnel or ratings on a Horizon ship is manned on "rotary" basis out of the union halls.  That is, Horizon requests that the SIU provide an AB (for example) for a certain period of time to work on a certain vessel, and the SIU then provides a qualified union member from the union hall at the vessel's nearest port of call.  By the same process, another SIU member of the same rating will succeed the AB in that position, assuming Horizon continues to require an AB.

Ex. A, Bohlman Decl., ¶4c.

(Undisputed.)

32.     Horizon must accept whatever qualified, mentally fit, and physically fit unlicensed seaman the SIU sends to fill the rotary position on the vessel.

Ex. A, Bohlman Decl., ¶4d.

(Disputed.)

//

//

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

1    33.    Horizon hired Tretyak to work on the ENTERPRISE and the other

2    Horizon-operated vessels according to this procedure (Facts 30-33).

3                Ex. A, Bohlman Decl., ¶7.

4                (Disputed.)

5

6    34.    A "qualified" unlicensed mariner means a seaman whom the SIU has

7    found to be mentally and physically fit, and who the US Coast Guard has also "documented"

8    (qualified) to perform the job responsibilities of the particular rating.

9                Ex. A, Bohlman Decl., ¶4c.

10               (Disputed.)

11

12   35.    The Coast Guard has implemented provisions of the International

13   Convention on Standards of Training, Certification and Watchkeeping for Seafarers (or

14   "STCW"), which requires that all U.S. mariners participate in "Basic Safety Training."

15               Ex. A, Bohlman Decl., ¶5.

16               (Undisputed.)

17

18   36.    The SIU provides its members with Basic Safety Training at the SIU's

19   school in Piney Point, Maryland.

20               Ex. A, Bohlman Decl., ¶5a.

21               (Undisputed.)

22

23   37.    One element of Basic Safety Training is "Personal Safety and Social

24   Responsibility," SCTW, A-VI/1-4, which includes "diversity training," including training to

25   recognize and prevent sexual harassment.

26               Ex. A, Bohlman Decl., ¶5b.

27               (Disputed.)

28

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

1       38.     As an employer of SIU members, Horizon maintains records of the SCTW

2   training its rotary hires have received.

3                       Ex. A, Bohlman Decl., ¶5c.

4                       (Disputed.)

5

6       39.     According to Horizon's records, Mr. Tretyak completed his Basic Safety

7   Training on 8/25/2000.

8                       Ex. A, Bohlman Decl., ¶8.

9                       (Disputed.)

10

11      40.     Horizon requires, as part of its own anti-harassment program, that any

12  crew member who believes that he or she has been the subject of discrimination or harassment is

13  required to report the alleged act to his or her supervisor within 48 hours, and that supervisor

14  shall immediately notify the Master of the vessel (or the Vessel Superintendent if the Master is

15  the alleged perpetrator), who shall investigate the claim.

16                      Ex. A, Bohlman Decl., ¶6a;

17                      Ex. K, Baldwin Decl., ¶6 ("Horizon requires crew members to report

18                          harassment");

19                      Ex. F, Flick Decl., ¶14 ("During sign-on procedures, we instruct our crew

20                          members to report any instances of sexual harassment.  Information about

21                          how to report sexual harassment is also posted on the ship.").

22                      (Disputed.)

23  //

24  //

25

26

27

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 12 -

41.     The Horizon crew member also has the option to anonymously report an instance of discrimination or harassment by using Horizon's Ethics Hotline.

        Ex. A, Bohlman Decl., ¶6b;

        Ex. H, Smith Decl., ¶7 ("Horizon had, and still has, protocols in place that allow crew members to report sexual harassment shoreside.").

        (Undisputed.)

42.     These complaint requirements and procedures of Horizon are available on the vessel and are posted in the mess rooms; they are also discussed with new hires.

        Ex. A, Bohlman Decl., ¶6c.

        (Disputed.)

43.     Michael T., Bohlman, as Director of Marine Services, expects to be notified in the normal course about any complaint of discrimination or harassment.

        Ex. A, Bohlman Decl., ¶6d.

        (Disputed.)

44.     As Director of Marine Services, Bohlman also has access to records concerning the complaint, investigation, and findings of any alleged sexual harassment by a Horizon crew member.

        Ex. A, Bohlman Decl., ¶6d.

        (Disputed.)

//

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

45. Assuming a third party notified either Horizon's shoreside offices, or the vessel, about a crew member of the vessel engaging in sexual harassment, Bohlman as Director of Marine Services would have been notified, and a record of the complaint would have been maintained at Horizon.

Ex. A, Bohlman Decl., ¶6e.

(Disputed.)

46. Bohlman was notified that Ports America reported to the ENTERPRISE that Tretyak had sexually harassed a Ports America employee, Lorraine Ferguson, at the security guard's booth in Oakland.

Ex. A, Bohlman Decl., ¶10.

(Undisputed.)

47. There is no record at Horizon of anyone reporting to Horizon that Tretyak had committed sexual harassment, or any harassment, against another crew member or anyone else, with one exception:  the complaint of Lorraine Ferguson, an employee of Ports America, that Tretyak had harassed her at the security guard's booth at the Oakland terminal on November 24, 2010.

Ex. A, Bohlman Decl., ¶9.

(Disputed.)

//

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 14 -

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

48.    The following Declarants, of the following ranks, served with Tretyak on Horizon-operated vessels as follows:

| Horizon-Operated Vessel | Declarant Name, Rank, Dates of Service with Tretyak | Citation to Evidence |
|---|---|---|
| USNS JOHN MCDONNELL | Michael W. Bacher, Master<br>11/21/2005 to 12/27/2005 | Ex. D, Bacher Decl., ¶4,5 |
| HORIZON HAWK | Michael Smith, Master<br>3/2/2007 to 4/3/2007 | Ex. H, Smith Decl., ¶4 |
|  | Norbert Chaudhary, Chief Mate<br>3/31/2007 to 5/5/2007 | Ex. L, Chaudhary Decl., ¶3 |
|  | Thomas J. MacKay, Master<br>3/31/2007 to 6/11/2007 | Ex. G, MacKay Decl., ¶5 |
|  | James Baldwin, Master<br>5/5/2007 to 6/11/2007 | Ex. K, Baldwin Decl., ¶3 |
|  | Michael Smith, Master<br>6/11/2007 | Ex. H, Smith Decl., ¶4 |
| HORIZON HAWK | Michael Smith, Master<br>7/17/2007 to 9/25/2007 | Ex. H, Smith Decl., ¶4 |
|  | Norbert Chaudhary, Chief Mate<br>7/17/2007 to 8/20/2007 | Ex. L, Chaudhary Decl., ¶3 |
|  | Thomas Ryan, Chief Mate<br>8/18/2007 to 9/22/2007 | Ex. J, Ryan Decl., ¶3, 9 |
|  | James Baldwin, Chief Mate<br>9/22/2007 to 9/25/2007 | Ex. K, Baldwin Decl., ¶3 |
|  | James Baldwin, Master<br>9/25/2007 to 10/29/2007 | Ex. K, Baldwin Decl., ¶3 |
|  | Thomas Ryan, Chief Mate<br>9/25/2007 to 10/29/2007 | Ex. J, Ryan Decl., ¶3, 9 |
| HORIZON ENTERPRISE | James Carbone, Master<br>5/27/2009 to 7/22/2009 | Ex. E, Carbone Decl., ¶4 |
|  | Douglas Nemeth, Chief Mate<br>5/27/2009 | Ex. I, Nemeth Decl., ¶3 |
|  | Errol Pak, Chief Mate<br>5/27/2009 to 7/22/2009 | Ex. M, Pak Decl., ¶3 |
|  | Kent Flick, Master<br>7/22/2009 to 9/29/2009 | Ex. F, Flick Decl., ¶5 |
|  | Douglas Nemeth, Chief Mate<br>8/19/2009 to 9/17/2009 | Ex. I, Nemeth Decl., ¶3 |
|  | Errol Pak, Chief Mate<br>9/17/2009 to 9/29/2009 | Ex. M, Pak Decl., ¶3 |

[CONTINUED NEXT PAGE]

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 15 -

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

1

2 | Horizon-Operated Vessel | Declarant Name, Rank, Dates of Service with Tretyak | Citation to Evidence |

| Horizon-Operated Vessel | Declarant Name, Rank, Dates of Service with Tretyak | Citation to Evidence |
|---|---|---|
| HORIZON ENTERPRISE | Kent Flick, Master 12/9/2009 to 1/6/2010 | Ex. F, Flick Decl., ¶5 |
| | Douglas Nemeth, Chief Mate 12/9/2009 to 1/6/2010 | Ex. I, Nemeth Decl., ¶3 |
| | James Carbone, Master 1/6/2010 to 2/3/2010 | Ex. E, Carbone Decl., ¶4 |
| | Errol Pak, Chief Mate 1/6/2010 to 2/3/2010 | Ex. M, Pak Decl., ¶3 |
| | Errol Pak, Master 2/3/2010 to 2/16/2010 | Ex. M, Pak Decl., ¶3 |
| HORIZON ENTERPRISE | Kent Flick, Master 3/17/2010 to 5/26/2010 | Ex. F, Flick Decl., ¶ |
| | Douglas Nemeth, Chief Mate 3/17/2010 to 4/28/2010 | Ex. I, Nemeth Decl., ¶3 |
| | Thomas Ryan, Chief Mate 5/12/2010 to 6/23/2010 | Ex. J, Ryan Decl., ¶3, 9 |
| | Ronald Radicali, Master 5/26/2010 to 7/20/2010 | Ex. B, Radicali Decl., ¶9 |
| | Douglas Nemeth, Chief Mate 6/23/2010 to 7/20/2010 | Ex. I, Nemeth Decl., ¶3 |
| HORIZON ENTERPRISE | Kent Flick, Master 9/20/2010 to 10/13/2010 | Flick Decl., ¶5 |
| | Thomas Ryan, Chief Mate 9/20/2010 to 10/10/2010 | Ryan Decl., ¶3, 9 |
| | Ronald Radicali, Master 10/13/2010 to 12/22/2010 | Radicali Decl., ¶9 |
| | Douglas Nemeth, Chief Mate 10/24/2010 to 12/19/2010 | Nemeth Decl., ¶3 |
| | Norbert Chaudhary, Master 12/22/2010 to 1/5/2011 | Chaudhary Decl., ¶3 |
| | Thomas Ryan, Chief Mate 1/2/2011 to 1/16/2011 | Ryan Decl., ¶3, 9 |
| | Kent Flick, Master 1/5/2011 to 1/16/2011 | Flick Decl., ¶5 |

(Undisputed.)

49.   The Master has supervisory authority over the entire vessel.

Ex. F, Flick Decl., ¶13.

(Undisputed.)

//

//

EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

50.     All complaints of harassment by a crew member are routinely passed on through the chain of command, or from shoreside, to the Master.

Ex. K, Baldwin Decl., ¶6; see also:

Ex. B, Radicali Decl., ¶10 ("If someone had made a complaint about one of my crew engaging in such behavior [harassment] while under my command, since I am the Master I would expect to hear about it, whether it had happened shoreside or on the ship, and whether it was reported to Horizon shoreside or to another member of my crew.").

Ex. E, Carbone Decl., ¶7 ("It was and is standard procedure for the Master to be notified of all complaints about his crew.");

Ex. F, Flick Decl, ¶14 ("Any reported harassment Mr. Tretyak may have committed while he was serving under my command should have been reported to me, either by the complaining crew member, or through the chain of command.");

Ex. H, Smith Decl., ¶6 ("I expect that any complaint about a member of my crew would be passed on to me as the captain of the ship.");

(Disputed.)

51.     An AB such as Tretyak is a member of the vessel's Deck Department, and the Chief Mate is the highest ranking officer in the Deck Department, and has day to day managerial authority over the Department.

Ex. F, Flick Decl., ¶13; see also:

Ex. K, Baldwin Decl., ¶6.

(Undisputed.)

//

//

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.: CV-11-03391-MEJ

1        52.     The Chief Mate reports directly to the Master about the Deck Department,

2 including any personnel issues involving its members.

3            Ex. F, Flick Decl., ¶13.

4            (Undisputed.)

5

6        53.     As head of the Deck Department, the Chief Mate also expects to receive

7 notification of any personnel issues involving the members of the Deck Department, including

8 its ABs.

9            Ex. J, Ryan Decl., ¶14;

10            Ex. K, Baldwin Decl., ¶6;

11            Ex. L, Chaudhary Decl., ¶5.

12            (Disputed.)

13

14        54.     During the period when one officer relieves another, called the

15 "handover" or "changeover" or "turnover," the outgoing Master reports any complaints of

16 harassment involving crew members to the relieving Master.

17            Ex. D, Bacher Decl., ¶4;

18            Ex. B, Radicali Decl., ¶10;

19            Ex. E, Carbone Decl., ¶6;

20            Ex. F, Flick Decl., ¶15;

21            Ex. H, Smith Decl., ¶8.

22            (Disputed.)

23

24        55.     Capt. Bacher never saw Tretyak harass anybody.

25            Ex. D, Bacher Decl., ¶5.

26            (Disputed.)

27 //

28 //

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 18 -

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

1    56.    Capt. Bacher did not receive any complaint about Tretyak harassing

2    anyone, on board or shoreside, while he was under Capt. Bacher's command.

3            Ex. D, Bacher Decl., ¶5.

4            (Disputed.)

5

6    57.    As Master, complaints of harassment are forwarded to Capt. Bacher very

7    quickly, even if they are based on incidents shoreside.

8            Ex. D, Bacher Decl., ¶5.

9            (Disputed.)

10

11    58.    Vessels like the JOHN MCDONNELL carry on-board clients, almost

12    always including female clients and, as a general rule, there is little tolerance for crew members

13    accused of harassment; they are often discharged.

14            Ex. D, Bacher Decl., ¶5.

15            (Disputed.)

16    59.    Tretyak had been working on the JOHN MCDONNELL for several weeks

17    when Capt. Bacher assumed command, and Capt. Bacher never discharged Tretyak for cause

18    from that vessel.

19            Ex. D, Bacher Decl, ¶5.

20            (Disputed.)

21

22    60.    Capt. Bacher does not remember Capt. James Mixon informing him

23    during the turnover of the USNS JOHN MCDONNELL during 11/21/2005 to 11/22/2005 that

24    Tretyak had harassed anyone before Capt. Bacher arrived.

25            Ex. D, Bacher Decl., ¶4.

26            (Disputed.)

27    //

28    //

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 19 -

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

1    61.    Capt. James Baldwin does not remember any problems, letters of warning

2    issued, or instances of harassment of any kind by Tretyak while Treytak was aboard the HAWK.

3         Ex. K, Baldwin Decl., ¶5.

4         (Disputed.)

5

6    62.    Capt. Baldwin never saw Tretyak sexually harass or bother anyone.

7         Ex. K, Baldwin Decl., ¶5.

8         (Disputed.)

9

10   63.    Capt. Baldwin never received a notice of a complaint of harassment

11   against Tretyak.

12        Ex. K, Baldwin Decl.¶6.

13        (Disputed.)

14

15   64.    Capt. Carbone recalls that Tretyak "was not an abusive or aggressive type

16   of person.  He did not cause any trouble."

17        Ex. E, Carbone Decl., ¶4.

18        (Disputed.)

19

20   65.    Capt. Carbone never observed Tretyak harassing anybody.

21        Ex. E, Carbone Decl., ¶4.

22        (Disputed.)

23

24   66.    Capt. Carbone never received a notice of a complaint of any kind lodged

25   against Tretyak.

26        Ex. E, Carbone Decl., ¶5.

27        (Disputed.)

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

1          67.     No Master that Capt. Carbone relieved ever informed him that Tretyak

2    had been accused of harassment.

3                  Ex. E, Carbone Decl., ¶6.

4                  (Disputed.)

5

6          68.     Capt. Chaudhary has no memory of Tretyak bothering or harassing

7    anyone, for any apparent reason, at any time.

8                  Ex. L, Chaudhary Decl., ¶5.

9                  (Disputed.)

10

11         69.     Capt. Chaudhary never learned from anyone that Tretyak had harassed

12   someone before there was an allegation by the Oakland terminal guard, which was reported to

13   Chaudhary during the Master's changeover on the ENTERPRISE on 12/21/2010.

14                 Ex. L, Chaudhary Decl., ¶¶4, 5.

15                 (Disputed.)

16

17         70.     As far as Capt. Flick observed, Tretyak had always behaved respectfully

18   to his fellow crewmembers, including female crewmembers.

19                 Ex. F, Flick Decl., ¶12.

20                 (Disputed.)

21

22         71.     Capt. Flick never observed Tretyak sexually harassing anyone.

23                 Ex. F, Flick Decl., ¶12.

24                 (Disputed.)

25   //

26   //

27

28

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

72.     Capt. Flick is unaware of any complaint, other than Plaintiff's, of Tretyak sexually harassing anyone while he was employed as a crew member of the ENTERPRISE, or while he was employed as a crew member on any other Horizon ship, or at any time whatsoever.

Ex. F, Flick Decl., ¶11; see also ¶¶13,14, 15.

(Disputed.)

73.     Capt. MacKay does not recall anything in Tretyak's manner or demeanor that would be indicative of sexually harassing behavior.

Ex. G, MacKay Decl., ¶3-4.

(Disputed.)

74.     Capt. MacKay never received a report, either directly or through the chain of command, about Tretyak harassing anyone.

Ex. G, MacKay Decl., ¶4.

(Disputed.)

75.     Chief Mate Nemeth has never seen Mr. Tretyak harass anyone.

Ex. I, Nemeth Decl., ¶5.

(Disputed.)

76.     Except for the complaint of Plaintiff, Chief Mate Nemeth never heard that Tretyak had harassed anyone.

Ex. I, Nemeth Decl., ¶5.

(Disputed.)

//

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

77.     Before hearing from Horizon's attorney that Tretyak was accused in November 2010 of sexually harassing a terminal security guard in Oakland, as he was returning from shore leave to the ENTERPRISE, Capt. Pak had never before heard of Tretyak doing such a thing.

Ex. M, Pak Decl., ¶3.

(Disputed.)

78.     Capt. Pak never had any trouble with Tretyak, and Capt. Pak never heard of any trouble.

Ex. M, Pak Decl., ¶3.

(Disputed.)

79.     Capt. Radicali never observed Tretyak sexually harassing or bothering anyone.

Ex. B, Radicali Decl., ¶9.

(Disputed.)

80.     Capt. Radicali generally recalls Tretyak as a "subdued, quiet person who did not make trouble or engage in violent or disruptive behavior."

Ex. B, Radicali Decl., ¶9.

(Disputed.)

81.     Before the 11/24/2010 complaint involving Plaintiff, no one ever reported to Capt. Radicali that Tretyak had engaged in harassment of any kind.

Ex. B, Radicali Decl., ¶10.

(Disputed.)

//

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

82.     Chief Mate Ryan has never seen or heard Tretyak sexually harass anyone.

Ex. J, Ryan Decl., ¶13.

(Disputed.)

83.     Chief Mate Ryan has seen Tretyak serve alongside female crew members, including female members of the Deck Department, but has never seen Tretyak sexually harass them or behave in a disrespectful or inappropriate manner towards his fellow crew members.

Ex. J, Ryan Decl., ¶13.

(Disputed.)

84.     Until the reported incident involving the security guard in Oakland before Horizon discharged Tretyak, Chief Mate Ryan had never heard of Tretyak sexually harassing anyone, on or off any ship.

Ex. J, Ryan Decl., ¶13, 14, 15.

(Disputed.)

85.     Capt. Smith never saw, and no one has ever reported to him, that Tretyak assaulted or sexually harassed or bothered anyone.

Ex. H, Smith Decl., ¶9.

(Disputed.)

86.     On November 24, 2010, Tretyak was allowed to go on shore leave and he left the ENTERPRISE.

Ex. B, Radicali Decl., ¶7.

(Disputed.)

//

//

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

87.     Crew members are allowed to leave the vessel on "shore leave," meaning their personal time spent ashore.

Ex. B, Radicali Decl., ¶6.

(Undisputed.)

88.     A seaman who is serving on a ship is periodically allowed shore leave, meaning that he or she is given the opportunity to go to shore during a port call to unwind, and to attend to personal matters.

Ex. J, Ryan Decl., ¶5.

(Undisputed.)

89.     The seaman is off duty during shore leave.

Ex. J, Ryan Decl., ¶7.

(Disputed.)

90.     Sometimes Capt. Radicali sends a crew member, such as the Steward, ashore in an official capacity for the vessel; however, the crew members on shore leave are not going ashore for any ship business and are on the their own personal time.

Ex. B, Radicali Decl., ¶6.

(Disputed.)

91.     The "one hour rule" requires the crew member on shore leave to return to the vessel at least one hour before it departs, but otherwise Horizon does not impose any requirements or rules on the crew member while he is on shore leave.

Ex. B, Radicali Decl., ¶6; see also:

Ex. J, Ryan Decl., ¶5 ("The seaman is off duty during shore leave, and must return to the ship one hour before the ship sails, per union rules.").

(Disputed.)

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

1          92.      On November 24, 2010, Tretyak returned to the vessel in the afternoon in

2  accordance with the "one hour rule."

3                Ex. B, Radicali Decl., ¶7.

4                (Disputed.)

5

6          93.      The ENTERPRISE undocked between 6:30 and 7:00 p.m. on November

7  24, 2010 and headed out to sea.

8                Ex. B, Radicali Decl., ¶7.

9                (Disputed.)

10

11         94.      After the ENTERPRISE left Oakland, Capt. Radicali received Ports

12  America's complaint that Tretyak had, earlier that day, made improper sexual advances to a

13  terminal security guard, Lorraine Ferguson, at one of the terminal gates.

14                Ex. B, Radicali Decl., ¶8.

15                (Disputed.)

16

17         95.      Capt. Radicali states in his Declaration:  "If AB Tretyak had engaged in

18  such behavior, that would certainly not be connected in any way with his employment by

19  Horizon.  As stated, Mr. Tretyak was actually on shore leave at the time, so whatever he did, he

20  was on his own personal time, not on ship's business."

21                Ex. B, Radicali Decl., ¶8.

22                (Disputed.)

23  //

24  //

25

26

27

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

96.     Based on the incident involving Tretyak, Plaintiff initiated an arbitration proceeding between her shoreside workers union (the International Longshore and Warehouse Union) and Tretyak's union (the Seafarers International Union).

Ex. B, Radicali Decl., ¶11; see also:

Ex. C, Depo. Plf., at 97-98.

(Undisputed.)

97.     In early January 2011, the arbitrator found that Mr. Tretyak had made unwelcome advances towards Ms. Ferguson.

Ex. A, Bohlman Decl., ¶10.

(Undisputed.)

98.     Based on the arbitrator's finding, Michael Bohlman, Horizon's Director of Marine Services, instructed Capt. Kent Flick, then serving on the ENTERPRISE at sea, to discharge Tretyak for cause at the next CONUS (continental U.S.) port of call.

Ex. A, Bohlman Decl., ¶10; see also:

Ex. F, Flick Decl., ¶¶6, 7.

(Disputed.)

99.     Capt. Flick notified Tretyak of his discharge for cause during a termination proceeding on the ENTERPRISE on January 12, 2011, as the vessel approached Tacoma, Washington.

Ex. F, Flick Decl., ¶¶9, 10 and Attachment A-6, A-7.

(Undisputed.)

//

//

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

1       100.    Capt. Flick did discharge Tretyak at the Port of Tacoma, Washington, on

2   January 16, 2011.

3                       Ex. A, Bohlman Decl., ¶10; see also:

4                       Ex. F, Flick Decl., ¶5.

5                       (Undisputed.)

6

7       101.    In connection with the January 2011 finding of the arbitrator, Horizon

8   requested that the Seafarers' Appeals Board, under Article 8A of the Shipping Rules, not

9   dispatch Tretyak to any Horizon vessel until the following offenses had been investigated and

10  resolved:  physical assault, gross misconduct, and acting to create a menace or nuisance to the

11  health or safety of others.

12                      Ex. A, Bohlman Decl, ¶11;

13                      Ex. F, Flick Decl., ¶¶8, 10, and Attachment A-4 to A-7.

14                      (Undisputed.)

15

16      102.    Horizon also requested that the Seafarers Appeals Board suspend Tretyak

17  from shipping out on Horizon ships for three years and that he "be given specific training with

18  regard to harassment and showing the proper respect for others."  (Undisputed.)

19                      Ex. A, Bohlman Decl., ¶11; see also:

20                      Ex. F, Flick Decl., Attachment A-4.

21                      (Undisputed.)

22

23      103.    On February 2, 2011, the Seafarers Appeals Board sustained Horizon's

24  Article 8A grievance.

25                      Ex. A, Bohlman Decl., ¶12 and Attachment B.

26                      (Undisputed.)

27  //

28  //

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 28 -

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ

104.    The Seafarers Appeals Board suspended Tretyak's shipping rights with Horizon for two years until December 5, 2012.

Ex. A, Bohlman Decl., ¶12 and Attachment B.

(Undisputed.)

105.    The Seafarers Appeals Board also required Tretyak to complete a Certified Sexual Harassment Class; Tretyak must provide proof of completion of this class to the Seafarers Appeals Board before the SIU may release Tretyak to a Horizon ship.

Ex. A, Bohlman Decl., ¶12 and Attachment B.

(Undisputed.)

106.    If the SIU attempted to dispatch Tretyak to a Horizon vessel before December 5, 2012, and before he had completed the required class, based on Horizon's records of the terms of the Board's decision, the dispatch would be flagged at Horizon's shoreside offices and on the vessel, and Horizon would reject any such attempt to dispatch Tretyak to a Horizon ship.

Ex. A, Bohlman Decl., ¶13.

(Disputed.)

107.    The only Article 8A suspension of Tretyak's shipping rights that is reflected in Horizon's records is the suspension of February 2, 2011, in connection with the incident involving Plaintiff.

Ex. A, Bohlman Decl., ¶14.

(Undisputed.)

108.    Tretyak has not worked on a Horizon vessel since Horizon discharged him for cause.

Ex. A, Bohlman Decl., ¶15.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 29 -

1    (Disputed.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 30 -

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS
Case No.:  CV-11-03391-MEJ