UNITED STATES DISTRICT COURT

Northern District of California

LORRAINE FERGUSON,

               Plaintiff,

  v.

HORIZON LINES, INC., et al.,

               Defendants.
_____/

No. CV11-3391 MEJ

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 40)**

## I. INTRODUCTION

On July 11, 2011, Plaintiff Lorraine Ferguson ("Ferguson") initiated this action against Defendants Horizon Lines, Inc., ("Horizon") and its former employee, Andrew A. Tretyak ("Tretyak"). Compl., Dkt. No. 1. Ferguson alleges that she was sexually assaulted by an intoxicated Tretyak while she was working as a security guard at the Ports of America terminal in Oakland, California, where Horizon's container ship Enterprise was docked. *Id.* Ferguson asserts that Horizon is liable for negligently hiring Tretyak and vicariously liable for his torts of assault, battery, and false imprisonment. *Id.* Tretyak was not served with the Complaint and has not appeared in this action.

Now before the Court is Horizon's Motion for Summary Judgment (Dkt. No. 40), where it argues that each of Ferguson's claims fail as a matter of law. Ferguson has opposed this Motion (Dkt. No. 27), to which Horizon has filed a Reply (Dkt. No. 37). Having fully considered the papers submitted by the parties and the arguments of counsel, the Court hereby GRANTS Horizon's Motion for the reasons explained below.

## II.  FACTUAL BACKGROUND

On November 24, 2010, Ferguson was working as a security guard at the east gate terminal booth when Tretyak returned from shore leave to reboard his employer's ship, the Enterprise.  Joint Statement of Undisputed and Disputed Facts (JSF) ¶¶ 6, 11, Dkt. No. 18.  Pursuant to protocol, Ferguson requested Tretyak's identification so that she could ensure he was on the crew member list provided by Horizon.  JSF ¶¶ 8-11.  Tretyak, alleged to be intoxicated, then barricaded Ferguson inside the terminal booth and asked for her phone number.  JSF ¶¶ 13, 14.  He proceeded to make sexual advances toward Ferguson, including kissing her cheek and neck.  JSF ¶ 15.  When Ferguson yelled for help, her co-worker, shuttle driver Brett Lee, quickly arrived and assisted her in getting out of the terminal booth.  JSF ¶ 16, 17.  Tretyak followed Ferguson until he was restrained by Lee and Ferguson's supervisor, Damon Gomes, who managed to put Tretyak onto the shuttle bus, which then drove him to the Enterprise.  JSF ¶ 18.  After the Enterprise departed Oakland, its Captain, Ronald Radicali, received a complaint from Gomes about Tretyak sexually harassing Ferguson earlier that day.  JSF ¶ 94.[1]

Based on Tretyak's conduct, Ferguson initiated an arbitration proceeding between her shoreside workers union and Tretyak's union.  JSF ¶ 96.[2]  In January 2011, the arbitrator found that

---

[1] The JSF submitted by the parties contains both undisputed and disputed facts.  This last fact, based on JSF ¶ 94, is disputed by Ferguson.  The Court is not sure why it is disputed (and Ferguson does not explain its objection) since JSF ¶ 94 only provides that Radicali learned about Ferguson's allegations after the Enterprise departed Oakland.  In Ferguson's evidentiary objections (Dkt. No. 29), she objects to Radicali's declaration, but not the portion of the declaration that Horizon relies on for JSF ¶ 94.  Accordingly, the Court incorporates the fact into this summary, particularly because it is only being referenced for background purposes.  The remaining evidentiary objections made by Ferguson are also not material to the analysis of Horizon's Motion and are therefore DENIED.  Horizon's evidentiary objections, outlined at the end of its Reply, are DENIED AS MOOT since the Court has granted its Motion.

[2] Ferguson asks the Court to take judicial notice of the arbitrator's decision, the transcript of the arbitration proceedings, and excerpts from Tretyak's divorce proceedings.  Dkt. No. 28.  This request is DENIED because the Court's decision does not turn on any of the information from these three exhibits.

2

Tretyak had made unwelcome sexual advances toward her. JSF ¶ 97. Based on the arbitrator's findings, Horizon decided to discharge Tretyak for cause. JSF ¶ 98. On January 12, 2011, Tretyak was notified about his discharge during a termination proceeding on the Enterprise, and he was formally discharged four days later when the Enterprise docked in Tacoma, Washington. JSF ¶ 100. Horizon then asked, pursuant to its collective bargaining agreement and governing shipping rules, for Tretyak to be banned from working on its ships for three years. JSF ¶ 102. He was eventually suspended for two years and required to complete sexual harassment classes. JSF ¶¶ 104, 105. To this day, Tretyak has never again worked on a Horizon ship. JSF ¶ 108.

### III. LEGAL STANDARD

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (internal quotations and citations omitted). On summary judgment, courts are required to view the evidence in the light most favorable too the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### IV. ANALYSIS

Horizon's Motion attacks Ferguson's direct claims against it for negligent hiring and unseaworthiness, and her indirect claim that Horizon is vicariously liable for Tretyak's torts of assault, battery, and false imprisonment. The Court discusses these issues in turn below.

A. <u>Unseaworthy Crew Member Claim</u>

In its Motion, Horizon argues that the part of Ferguson's fourth claim that alleges unseaworthiness against Horizon is improper and fails as a matter of law. Motion at 14. Ferguson concedes this, and she has withdrawn the claim. Opp. at 23; Dkt. No. 32. Accordingly, Horizon's Motion on this issue is GRANTED.

B. <u>Negligent Hiring Claim</u>

The crux of Ferguson's fourth claim alleges that Horizon knew or should have known that Tretyak "was and had proclivities, a propensity and was predisposed to sexual harassment, alcoholism and violent behavior towards others," and is consequently liable for negligently hiring him. Compl., ¶ 28. Such a negligent hiring claim requires a plaintiff to establish that the employer had actual or constructive knowledge that the employee was unfit or incompetent and that this created a particular risk to others. CACI 426 (the second element of a negligent hiring claim requires proof that the employer "knew or should have known that [the employee] was unfit or incompetent and this unfitness or incompetence created a particular risk to others"); *Diaz v. Carcamo*, 51 Cal.4th 1148, 1157 (2011) (explaining that a negligent hiring claim is similar to a claim for negligent entrustment, and "[a]wareness, constructive or actual, that a person is unfit or incompetent to drive underlies a claim that an employer was negligent in hiring or retaining that person as a driver."); *see also Noble v. Sears, Roebuck & Co.*, 33 Cal.App.3d 654 (1973). Horizon argues that Ferguson cannot present any evidence to show that it had any knowledge about Ferguson's unfitness to be a crew member.

Ferguson's Opposition does not provide any direct arguments with respect to her negligent hiring claim. In her statement of facts, Ferguson does mention that "Tretyak apparently has a history of verbal abuse, physical violence, and severe alcoholism as can be seen from the [d]eposition of Diane Hutchinson, Tretyak's ex-wife." Opp. at 3. But, as Horizon correctly points out, Hutchinson admits that she never communicated Tretyak's history of transgressions to either his union or Horizon. Supplemental Declaration of Katharine Essick, Dkt. No. 34-1, Ex. B at 69-70. Accordingly, Ferguson has not presented any evidence which could possibly establish that Horizon

4

1 had any actual or constructive knowledge that Tretyak was unfit for employment, an essential
2 element of a negligent hiring claim.[3] Without such evidence, this claim cannot withstand summary
3 judgment. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("As other courts have noted, it
4 is not our task, or that of the district court, to scour the record in search of a genuine issue of triable
5 fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that
6 precludes summary judgment.") (internal quotations and citations omitted). Horizon's Motion on
7 Ferguson's negligent hiring claim is therefore GRANTED.

C. Vicarious Liability Claim for Tretyak's Torts

Ferguson's other claim against Horizon seeks to attach vicarious liability on the company for Tretyak's torts of assault, battery, and false imprisonment. Both parties agree that for Horizon to be vicariously liable, Tretyak's acts must have been committed within the scope of his employment. Horizon argues that regardless whether maritime law or California law applies, it cannot be held responsible for Tretyak's acts because they were not related to his job. Ferguson, on the other hand, argues that maritime law applies to this dispute, and whether Tretyak's conduct was within the scope of his employment is a question of fact that is proper for a jury to decide. Ferguson bases a large part of her argument on the fact that shore leave for a crew member like Tretyak is "unlike personal recreational time for non-maritime employees" and is instead an integral part of the job that is within the scope of employment. Opp. at 1.

There is no need to determine whether to apply maritime or California law to this dispute because under both jurisdictions, as explained below, the Court finds that Tretyak was not acting within the scope of his employment as a matter of law. Moreover, the Court does not need to analyze the issues with respect to shore leave to decide whether Tretyak was actually on duty when

---

[3] Ferguson's lack of evidence on this claim is corroborated by her responses to Horizon's interrogatories. When asked by Horizon to identify all people with knowledge of any facts to support her negligent hiring claim, Ferguson responded that she "does not currently have adequate information or knowledge to identify specific individuals at this time." Declaration of Katharine Essick (Essick Decl.), Dkt. No. 19, Ex. N at 4. Ferguson never updated or amended the above interrogatory response. *Id*. at ¶ 6.

5

the alleged incident occurred at the terminal booth. This is because the Court concludes that even if Tretyak sexually assaulted someone while he was on the ship and working (i.e., he was not on shore leave and consequently there is no dispute whether he was or was not on duty), the Court would still find that such an assault is not within the scope of employment since it would be unrelated to his duties as an employee. *See* 3 Witkin, Summary 10th (2005) Agency, § 190, p. 242 ("Courts generally have held that an employee who sexually assaults a third party is not acting within the scope of employment for purposes of imposing liability on the employer under the doctrine of respondeat superior. *It is immaterial whether the assault occurred at or away from the workplace or when the employee was on or off duty.* The rationale is that sexual misconduct simply is not foreseeable, because it does not relate to employment duties or tasks [ ] and is not necessary to the employee's personal comfort, health, or convenience while at work [ ], but rather, is committed only for the employee's personal gratification.") (emphasis added).

With respect to California law, for conduct to be within the scope of employment, it must be "reasonably related to the kinds of tasks that the employee was employed to perform," or "reasonably foreseeable in light of the employer's business or the employee's job responsibilities." CACI 3720. While this determination is usually a question of fact for a jury to determine, it becomes a question of law when the facts are undisputed and no conflicting inferences are possible. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal.4th 291, 299 (1995). The Court finds the holding in *Lisa M.*, a case that presents analogous issues as those presented here, dispositive to this matter. *Lisa M.* held that the employer was not vicariously liable for its employee's sexual battery, summing up its reasoning as follows:

> Hospital employed a technician to conduct ultrasound examinations. The technician, after completing such an examination of plaintiff, took advantage of plaintiff's trust and his own superior knowledge to commit on her a deliberate sexual battery. His reasons for doing so did not derive from any events or conditions of his employment, nor were his actions provoked by anything that occurred during the prescribed examination. Hospital, by employing the technician and providing the ultrasound room, may have set the stage for his misconduct, but the script was entirely of his own, independent invention. For this reason it would be unfair and inconsistent with the basic rationale of respondeat superior to impose liability on Hospital irrespective of its own negligence.

*Id.* at 306.

The same rationale applies to Tretyak's conduct. His reasons for sexually assaulting Ferguson did not derive from any events or conditions of his employment and were entirely of his own invention. Due to this, Horizon should not be held responsible for Tretyak's acts which were based on "personal motivations [that] were not generated by or an outgrowth of workplace responsibilities, conditions or events." *Id.* at 302. His sexual assault was "the independent product of [his] aberrant decision to engage in conduct unrelated to his duties. In the pertinent sense, therefore, [his] actions were not foreseeable from the nature of the work he was employed to perform." *Id.* at 303.

Under maritime law, the above result — that Tretyak was not acting within the scope of his employment — remains the same. In her Opposition, Ferguson argues that maritime law applies, but does not provide a rule statement for vicarious liability under maritime law. Instead, Ferguson cites various cases, predominately relying on *Ira S. Bushey & Sons, Inc. v. United States*, 398 F.2d 167 (2d Cir. 1968), and *Taber v. Maine*, 67 F.3d 1029 (2d Cir. 1995), and argues that the Court should follow the reasoning in these decisions to find Horizon liable for Tretyak's conduct. As explained in further detail below, neither of these cases help Ferguson.

In *Bushey*, the court employed a "foreseeability test" that is similar to California's test, and held that the employer was vicariously liable for its crew member's conduct after he returned from shore leave intoxicated and proceeded to open several valves on the ship, causing damage to the drydock wall. 398 F.2d at 169-70. *Bushey*, however, explained that vicarious liability was appropriate in this situation only because it was foreseeable that a crew member going aboard a ship might cause damage to the drydock, making it fair for the employer to bear this loss. *Id.* at 172. But *Bushey* specifically pointed out that vicarious liability would not be proper if the crew member decided to shoot a security guard on the dock because he believed the guard was having an affair with his wife. *Id.* According to *Bushey*, the employer should not be liable in this situation because "the incident would have related to the seaman's domestic life, not to his seafaring activity." *Id.* (further explaining that if the crew member "had set fire to the bar where he had been imbibing or

had caused an accident on the street while returning to the drydock, the Government would not be liable; the activities of the 'enterprise' do not reach into areas where the servant does not create risks different from those attendant on the activities of the community in general."). Here, similar to *Bushey*, Horizon should not be liable for Tretyak's conduct since it was related to his "domestic life" and not to his job duties.

In *Taber*, a case based on the Federal Tort Claims Act, the court utilized California law for its vicarious liability analysis since there was no applicable law in Guam, where the accident occurred. 67 F.3d at 1033. As the Court explained in detail above, under California law, Horizon would not be vicariously liable for Tretyak's conduct, and the Court consequently does not find *Taber* persuasive. Moreover, the facts of this matter are distinguishable from *Taber*, where the court found the government employer vicariously liable since it was foreseeable that an intoxicated service member, who drank on base, would then leave the base by car and be involved in an automobile accident. *Id.* at 1037. Here, Tretyak did not harm Ferguson because he became intoxicated and drove a car that injured Ferguson. Rather, Tretyak harmed Ferguson by sexually assaulting her, which, contrary to Ferguson's argument, is not a foreseeable consequence of his employment.

Horizon argues that if the Court is going to use maritime law rather than California law, then it should employ the vicarious liability test from the Restatement (Second) of Agency § 228 (Section 228), as several other courts have done in maritime disputes. *See, e.g.*, *Stoot v. D & D Catering Serv., Inc.*, 807 F.2d 1197, 1200 (5th Cir. 1987). Under Section 228, "[c]onduct of a servant is within the scope of employment, if, but only if, (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." Because Tretyak's sexual assault was not related to his work or actuated by any purpose to serve Horizon, the Restatement test also corroborates that Horizon should not be vicariously liable for his conduct.

Based on the above, regardless of the law that the Court employs, it concludes that Horizon should not be responsible for Tretyak's acts because they were not related to or foreseeable from his job duties as a crew member aboard the Enterprise.

On August 16, 2012, Horizon filed a statement with the Court notifying it of a recent decision by the Fifth Circuit, *Beech v. Hercules Drilling Company, LLC*, 691 F.3d 566 (5th Cir. 2012), that dealt with the scope of employment issue in a maritime case under the Jones Act. Dkt. No. 39. On November 4, 2012, Ferguson filed a response to this statement, notifying the Court that the *Beech* decision had been reported and subsequently cited to by one case. Dkt. No. 40. In her filed statement, Ferguson also included argument and citations to other cases, which the Court does not consider because briefing has closed and the matter was already submitted to the Court.

*Beech*, nonetheless, is instructive. The Fifth Circuit held that the employer was not vicariously liable for the conduct of a crew member who brought a gun onto the ship that later misfired, leading to the death of another crew member. *Beech*, 691 F.3d at 577. *Beech* explained its holding as follows: "Some conduct that is consistent with a very broad and flexible job duty will nevertheless be so contrary to the employer's business interests, so unforeseeable by the employer, and so far removed from the employee's role as employee as to be outside the course and scope of employment. Even construing the course and scope of Cosenza's job duties very liberally, his handling of a loaded firearm in the vessel's break room fell outside the course and scope of his employment." *Id.* The Court agrees with this reasoning and it aptly applies to Tretyak's conduct, leading to the Court's decision to find that Horizon is not vicariously liable as a matter of law. It would be improper to attribute to Horizon the costs "of a deliberate, independently motivated sexual battery" that is unconnected to the company's operations. *See Lisa M.*, 12 Cal.4th at 302. In other words, the connection is "too attenuated" to result in Ferguson's damages being allocated to Horizon as a cost of doing business. *Id.* at 304-05. ("For reasons already discussed, we conclude the connection between Tripoli's employment duties — to conduct a diagnostic examination — and his independent commission of a deliberate sexual assault was too attenuated, without proof of Hospital's negligence, to support allocation of plaintiff's losses to Hospital as a cost of doing

1  business."). Thus, Horizon's Motion with respect to Ferguson's vicarious liability claim is
2  GRANTED.

## V. CONCLUSION

Ferguson's Opposition also includes several arguments that are disjointed from her Complaint, as well as Horizon's Motion, and are tenuous at best. For instance, she appears to argue that Horizon is liable for failing to enforce its alcohol policies. Opp. at 11. As part of this argument, Ferguson first reasserts that "maritime law is applicable not the California law cited by Defendant." *Id.* Then, in direct contradiction to her previous sentence, Ferguson cites to an unpublished Ninth Circuit decision that used California law — not maritime law — when conducting a vicarious liability analysis. *Avitia v. United States*, 24 Fed. App'x 771, 773 (9th Cir. Dec. 14, 2001) (holding that the hospital employer could not be vicariously liable under California law for its doctor's intentional sexual assault, but was vicariously liable for its employees' negligence in failing to abide by the hospital's chaperone policy). First, this Court cannot consider the *Avitia* case since Ninth Circuit Rule 36-3(c) prohibits any citations to unpublished decisions issued before 2007. Second, the Court finds that it would be improper to permit Ferguson to introduce this new theory of liability for the first time on summary judgment. Her Complaint against Horizon alleges that the company is vicariously liable for Tretyak's conduct based on maritime law. Compl ¶ 5 ("Defendant Horizon, as employer of Defendant Tretyak, is liable for the conduct of Defendant Tretyak under the general maritime law."). The Court has already explained why maritime law does not afford Ferguson any relief on this vicarious liability issue. Ferguson's Complaint also attempts to hold Horizon accountable directly through a negligent hiring claim. Compl. ¶ 28. The Court has also explained why this claim cannot withstand summary judgment. No other type of negligence allegations were asserted by Ferguson in her Complaint, either against Horizon or Tretyak.[4] And Ferguson's attempt

---

[4] Ferguson's responses to Horizon's interrogatories also confirm that this current argument falls outside the scope of her allegations in the Complaint. Ferguson summarizes her negligence hiring claim against Horizon as follows: "Horizon's choice to hire Tretyak as a crewmember on the M/V Horizon Enterprise resulted from either (1) Horizon's failure to adequately screen Tretyak for a propensity for sexual harassment and violence, or (2) Horizon's determination to hire Tretyak

10

1  to attach liability against Horizon under this new theory cannot be permitted at this late stage of the
2  proceedings.  For the same reason, to the extent that Ferguson attempts to now attach liability on
3  Horizon for violating United States Coast Guard regulations, the Code of Federal Regulations, or the
4  Maritime Security Act, those attempts are also improper.  Again, such allegations have never been
5  previously asserted by Ferguson.
6        For the foregoing reasons, Horizon's Motion for Summary Judgment is GRANTED in its
7  entirety.
8        **IT IS SO ORDERED.**

10 Dated: November 14, 2012

11                                 Maria-Elena James
                                Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

---

despite evidence of a propensity for sexual harassment and violence.  Tretyak also admitted that he had a history of flirting with female employees at the port of Oakland during arbitration.  This history proves that Horizon knew or should have know of Tretyak's proclivities." Essick Decl., Ex. N at 3-4.  In her other interrogatory responses, Ferguson does not allude to any other negligence claims she may have against either Horizon or Tretyak.