1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

## UNITED STATES  DISTRICT COURT

### Northern District of California

LORRAINE FERGUSON,

               Plaintiff,

    v.

HORIZON LINES, INC., et al.,

               Defendants.

_____/

No.  CV11-3391 MEJ

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 40)**

## I.  INTRODUCTION

On July 11, 2011, Plaintiff Lorraine Ferguson ("Ferguson") initiated this action against Defendants Horizon Lines, Inc., ("Horizon") and its former employee, Andrew A. Tretyak ("Tretyak").  Compl., Dkt. No. 1.  Ferguson alleges that she was sexually assaulted by an intoxicated Tretyak while she was working as a security guard at the Ports of America terminal in Oakland, California, where Horizon's container ship Enterprise was docked.  *Id.*  Ferguson asserts that Horizon is liable for negligently hiring Tretyak and vicariously liable for his torts of assault, battery, and false imprisonment.  *Id.*  Tretyak was not served with the Complaint and has not appeared in this action.

Now before the Court is Horizon's Motion for Summary Judgment (Dkt. No. 40), where it argues that each of Ferguson's claims fail as a matter of law.  Ferguson has opposed this Motion (Dkt. No. 27), to which Horizon has filed a Reply (Dkt. No. 37).  Having fully considered the papers submitted by the parties and the arguments of counsel, the Court hereby GRANTS Horizon's Motion for the reasons explained below.

UNITED STATES DISTRICT COURT
For the Northern District of California

## II.  FACTUAL BACKGROUND

On November 24, 2010, Ferguson was working as a security guard at the east gate terminal booth when Tretyak returned from shore leave to reboard his employer's ship, the Enterprise.  Joint Statement of Undisputed and Disputed Facts (JSF) ¶¶ 6, 11, Dkt. No. 18.  Pursuant to protocol, Ferguson requested Tretyak's identification so that she could ensure he was on the crew member list provided by Horizon.  JSF ¶¶ 8-11.  Tretyak, alleged to be intoxicated, then barricaded Ferguson inside the terminal booth and asked for her phone number.  JSF ¶¶ 13, 14.  He proceeded to make sexual advances toward Ferguson, including kissing her cheek and neck.  JSF ¶ 15.  When Ferguson yelled for help, her co-worker, shuttle driver Brett Lee, quickly arrived and assisted her in getting out of the terminal booth.  JSF ¶ 16, 17.  Tretyak followed Ferguson until he was restrained by Lee and Ferguson's supervisor, Damon Gomes, who managed to put Tretyak onto the shuttle bus, which then drove him to the Enterprise.  JSF ¶ 18.  After the Enterprise departed Oakland, its Captain, Ronald Radicali, received a complaint from Gomes about Tretyak sexually harassing Ferguson earlier that day.  JSF ¶ 94.[1]

Based on Tretyak's conduct, Ferguson initiated an arbitration proceeding between her shoreside workers union and Tretyak's union.  JSF ¶ 96.[2]  In January 2011, the arbitrator found that

---

[1] The JSF submitted by the parties contains both undisputed and disputed facts.  This last fact, based on JSF ¶ 94, is disputed by Ferguson.  The Court is not sure why it is disputed (and Ferguson does not explain its objection) since JSF ¶ 94 only provides that Radicali learned about Ferguson's allegations after the Enterprise departed Oakland.  In Ferguson's evidentiary objections (Dkt. No. 29), she objects to Radicali's declaration, but not the portion of the declaration that Horizon relies on for JSF ¶ 94.  Accordingly, the Court incorporates the fact into this summary, particularly because it is only being referenced for background purposes.  The remaining evidentiary objections made by Ferguson are also not material to the analysis of Horizon's Motion and are therefore DENIED.  Horizon's evidentiary objections, outlined at the end of its Reply, are DENIED AS MOOT since the Court has granted its Motion.

[2] Ferguson asks the Court to take judicial notice of the arbitrator's decision, the transcript of the arbitration proceedings, and excerpts from Tretyak's divorce proceedings.  Dkt. No. 28.  This request is DENIED because the Court's decision does not turn on any of the information from these three exhibits.

2

1

2  Tretyak had made unwelcome sexual advances toward her.  JSF ¶ 97.  Based on the arbitrator's

3  findings, Horizon decided to discharge Tretyak for cause.  JSF ¶ 98.  On January 12, 2011, Tretyak

4  was notified about his discharge during a termination proceeding on the Enterprise, and he was

5  formally discharged four days later when the Enterprise docked in Tacoma, Washington.  JSF ¶ 100.

6  Horizon then asked, pursuant to its collective bargaining agreement and governing shipping rules,

7  for Tretyak to be banned from working on its ships for three years.  JSF ¶ 102.  He was eventually

8  suspended for two years and required to complete sexual harassment classes.  JSF ¶¶ 104, 105.  To

9  this day, Tretyak has never again worked on a Horizon ship.  JSF ¶ 108.

10  ### III.  LEGAL STANDARD

11  Summary judgment is appropriate only when there is no genuine dispute of material fact, and

12  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party

13  bears both the initial burden of production as well as the ultimate burden of persuasion to

14  demonstrate that no genuine dispute of material fact remains.  *Nissan Fire & Marine Ins. Co., Ltd. v.*

15  *Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial

16  burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or

17  by the depositions, answers to interrogatories, and admissions on file, designate specific facts

18  showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)

19  (internal quotations and citations omitted).  On summary judgment, courts are required to view the

20  evidence in the light most favorable too the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v.*

21  *Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  If a reasonable jury could return a verdict in favor of

22  the nonmoving party, summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc.,* 477

23  U.S. 242, 248 (1986).

24  ### IV.  ANALYSIS

25  Horizon's Motion attacks Ferguson's direct claims against it for negligent hiring and

26  unseaworthiness, and her indirect claim that Horizon is vicariously liable for Tretyak's torts of

27  assault, battery, and false imprisonment.  The Court discusses these issues in turn below.

28

3

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   A.  Unseaworthy Crew Member Claim

2        In its Motion, Horizon argues that the part of Ferguson's fourth claim that alleges

3   unseaworthiness against Horizon is improper and fails as a matter of law.   Motion at 14.  Ferguson

4   concedes this, and she has withdrawn the claim.  Opp. at 23; Dkt. No. 32.  Accordingly, Horizon's

5   Motion on this issue is GRANTED.

6   B.  Negligent Hiring Claim

7        The crux of Ferguson's fourth claim alleges that Horizon knew or should have known that

8   Tretyak "was and had proclivities, a propensity and was predisposed to sexual harassment,

9   alcoholism and violent behavior towards others," and is consequently liable for negligently hiring

10  him.  Compl., ¶ 28.  Such a negligent hiring claim requires a plaintiff to establish that the employer

11  had actual or constructive knowledge that the employee was unfit or incompetent and that this

12  created a particular risk to others.  CACI 426 (the second element of a negligent hiring claim

13  requires proof that the employer "knew or should have known that [the employee] was unfit or

14  incompetent and this unfitness or incompetence created a particular risk to others"); *Diaz v.*

15  *Carcamo*, 51 Cal.4th 1148, 1157 (2011) (explaining that a negligent hiring claim is similar to a

16  claim for negligent entrustment, and "[a]wareness, constructive or actual, that a person is unfit or

17  incompetent to drive underlies a claim that an employer was negligent in hiring or retaining that

18  person as a driver."); *see also Noble v. Sears, Roebuck & Co.*, 33 Cal.App.3d 654 (1973).  Horizon

19  argues that Ferguson cannot present any evidence to show that it had any knowledge about

20  Ferguson's unfitness to be a crew member.

21        Ferguson's Opposition does not provide any direct arguments with respect to her negligent

22  hiring claim.  In her statement of facts, Ferguson does mention that "Tretyak apparently has a

23  history of verbal abuse, physical violence, and severe alcoholism as can be seen from the

24  [d]eposition of Diane Hutchinson, Tretyak's ex-wife."  Opp. at 3.  But, as Horizon correctly points

25  out, Hutchinson admits that she never communicated Tretyak's history of transgressions to either his

26  union or Horizon.  Supplemental Declaration of Katharine Essick, Dkt. No. 34-1, Ex. B at 69-70.

27  Accordingly, Ferguson has not presented any evidence which could possibly establish that Horizon

28

4

had any actual or constructive knowledge that Tretyak was unfit for employment, an essential

element of a negligent hiring claim.[3]  Without such evidence, this claim cannot withstand summary

judgment.  *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("As other courts have noted, it

is not our task, or that of the district court, to scour the record in search of a genuine issue of triable

fact.  We rely on the nonmoving party to identify with reasonable particularity the evidence that

precludes summary judgment.") (internal quotations and citations omitted).  Horizon's Motion on

Ferguson's negligent hiring claim is therefore GRANTED.

C.  <u>Vicarious Liability Claim for Tretyak's Torts</u>

   Ferguson's other claim against Horizon seeks to attach vicarious liability on the company for

Tretyak's torts of assault, battery, and false imprisonment.  Both parties agree that for Horizon to be

vicariously liable, Tretyak's acts must have been committed within the scope of his employment.

Horizon argues that regardless whether maritime law or California law applies, it cannot be held

responsible for Tretyak's acts because they were not related to his job.  Ferguson, on the other hand,

argues that maritime law applies to this dispute, and whether Tretyak's conduct was within the scope

of his employment is a question of fact that is proper for a jury to decide.  Ferguson bases a large

part of her argument on the fact that shore leave for a crew member like Tretyak is "unlike personal

recreational time for non-maritime employees" and is instead an integral part of the job that is within

the scope of employment.  Opp. at 1.

   There is no need to determine whether to apply maritime or California law to this dispute

because under both jurisdictions, as explained below, the Court finds that Tretyak was not acting

within the scope of his employment as a matter of law.  Moreover, the Court does not need to

analyze the issues with respect to shore leave to decide whether Tretyak was actually on duty when

---

  [3] Ferguson's lack of evidence on this claim is corroborated by her responses to Horizon's
interrogatories.  When asked by Horizon to identify all people with knowledge of any facts to
support her negligent hiring claim, Ferguson responded that she "does not currently have adequate
information or knowledge to identify specific individuals at this time."  Declaration of Katharine
Essick (Essick Decl.), Dkt. No. 19, Ex. N at 4.  Ferguson never updated or amended the above
interrogatory response.  *Id.* at ¶ 6.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

the alleged incident occurred at the terminal booth.  This is because the Court concludes that even if

Tretyak sexually assaulted someone while he was on the ship and working (i.e., he was not on shore

leave and consequently there is no dispute whether he was or was not on duty), the Court would still

find that such an assault is not within the scope of employment since it would be unrelated to his

duties as an employee.  *See* 3 Witkin, Summary 10th (2005) Agency, § 190, p. 242 ("Courts

generally have held that an employee who sexually assaults a third party is not acting within the

scope of employment for purposes of imposing liability on the employer under the doctrine of

respondeat superior.  *It is immaterial whether the assault occurred at or away from the workplace or

when the employee was on or off duty.*  The rationale is that sexual misconduct simply is not

foreseeable, because it does not relate to employment duties or tasks [ ] and is not necessary to the

employee's personal comfort, health, or convenience while at work [ ], but rather, is committed only

for the employee's personal gratification.") (emphasis added).

      With respect to California law, for conduct to be within the scope of employment, it must be

"reasonably related to the kinds of tasks that the employee was employed to perform," or

"reasonably foreseeable in light of the employer's business or the employee's job responsibilities."

CACI 3720.  While this determination is usually a question of fact for a jury to determine, it

becomes a question of law when the facts are undisputed and no conflicting inferences are possible.

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal.4th 291, 299 (1995).  The Court finds the

holding in *Lisa M.*, a case that presents analogous issues as those presented here, dispositive to this

matter.  *Lisa M.* held that the employer was not vicariously liable for its employee's sexual battery,

summing up its reasoning as follows:

> Hospital employed a technician to conduct ultrasound examinations.  The technician,
> after completing such an examination of plaintiff, took advantage of plaintiff's trust
> and his own superior knowledge to commit on her a deliberate sexual battery.  His
> reasons for doing so did not derive from any events or conditions of his employment,
> nor were his actions provoked by anything that occurred during the prescribed
> examination.  Hospital, by employing the technician and providing the ultrasound
> room, may have set the stage for his misconduct, but the script was entirely of his
> own, independent invention.  For this reason it would be unfair and inconsistent with
> the basic rationale of respondeat superior to impose liability on Hospital irrespective
> of its own negligence.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    *Id.* at 306.

2          The same rationale applies to Tretyak's conduct.  His reasons for sexually assaulting

3    Ferguson did not derive from any events or conditions of his employment and were entirely of his

4    own invention.  Due to this, Horizon should not be held responsible for Tretyak's acts which were

5    based on "personal motivations [that] were not generated by or an outgrowth of workplace

6    responsibilities, conditions or events."  *Id.* at 302.  His sexual assault was "the independent product

7    of [his] aberrant decision to engage in conduct unrelated to his duties.  In the pertinent sense,

8    therefore, [his] actions were not foreseeable from the nature of the work he was employed to

9    perform."  *Id.* at 303.

10          Under maritime law, the above result — that Tretyak was not acting within the scope of his

11    employment — remains the same.  In her Opposition, Ferguson argues that maritime law applies,

12    but does not provide a rule statement for vicarious liability under maritime law.  Instead, Ferguson

13    cites various cases, predominantly relying on *Ira S. Bushey & Sons, Inc. v. United States*, 398 F.2d

14    167 (2d Cir. 1968), and *Taber v. Maine*, 67 F.3d 1029 (2d Cir. 1995), and argues that the Court

15    should follow the reasoning in these decisions to find Horizon liable for Tretyak's conduct.  As

16    explained in further detail below, neither of these cases help Ferguson.

17          In *Bushey*, the court employed a "foreseeability test" that is similar to California's test, and

18    held that the employer was vicariously liable for its crew member's conduct after he returned from

19    shore leave intoxicated and proceeded to open several valves on the ship, causing damage to the

20    drydock wall.  398 F.2d at 169-70.  *Bushey*, however, explained that vicarious liability was

21    appropriate in this situation only because it was foreseeable that a crew member going aboard a ship

22    might cause damage to the drydock, making it fair for the employer to bear this loss.  *Id.* at 172.  But

23    *Bushey* specifically pointed out that vicarious liability would not be proper if the crew member

24    decided to shoot a security guard on the dock because he believed the guard was having an affair

25    with his wife.  *Id.*  According to *Bushey*, the employer should not be liable in this situation because

26    "the incident would have related to the seaman's domestic life, not to his seafaring activity."  *Id.*

27    (further explaining that if the crew member "had set fire to the bar where he had been imbibing or

28

7

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    had caused an accident on the street while returning to the drydock, the Government would not be

2    liable; the activities of the 'enterprise' do not reach into areas where the servant does not create risks

3    different from those attendant on the activities of the community in general."). Here, similar to

4    *Bushey*, Horizon should not be liable for Tretyak's conduct since it was related to his "domestic life"

5    and not to his job duties.

6         In *Taber*, a case based on the Federal Tort Claims Act, the court utilized California law for

7    its vicarious liability analysis since there was no applicable law in Guam, where the accident

8    occurred. 67 F.3d at 1033. As the Court explained in detail above, under California law, Horizon

9    would not be vicariously liable for Tretyak's conduct, and the Court consequently does not find

10   *Taber* persuasive. Moreover, the facts of this matter are distinguishable from *Taber*, where the court

11   found the government employer vicariously liable since it was foreseeable that an intoxicated

12   service member, who drank on base, would then leave the base by car and be involved in an

13   automobile accident. *Id.* at 1037. Here, Tretyak did not harm Ferguson because he became

14   intoxicated and drove a car that injured Ferguson. Rather, Tretyak harmed Ferguson by sexually

15   assaulting her, which, contrary to Ferguson's argument, is not a foreseeable consequence of his

16   employment.

17        Horizon argues that if the Court is going to use maritime law rather than California law, then

18   it should employ the vicarious liability test from the Restatement (Second) of Agency § 228 (Section

19   228), as several other courts have done in maritime disputes. *See, e.g.*, *Stoot v. D & D Catering*

20   *Serv., Inc.*, 807 F.2d 1197, 1200 (5th Cir. 1987). Under Section 228, "[c]onduct of a servant is

21   within the scope of employment, if, but only if, (a) it is the kind he is employed to perform; (b) it

22   occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by

23   a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the

24   use of force is not unexpectable by the master." Because Tretyak's sexual assault was not related to

25   his work or actuated by any purpose to serve Horizon, the Restatement test also corroborates that

26   Horizon should not be vicariously liable for his conduct.

27

28

1    Based on the above, regardless of the law that the Court employs, it concludes that Horizon

2    should not be responsible for Tretyak's acts because they were not related to or foreseeable from his

3    job duties as a crew member aboard the Enterprise.

4    On August 16, 2012, Horizon filed a statement with the Court notifying it of a recent

5    decision by the Fifth Circuit, *Beech v. Hercules Drilling Company, LLC*, 691 F.3d 566 (5th Cir.

6    2012), that dealt with the scope of employment issue in a maritime case under the Jones Act.  Dkt.

7    No. 39.  On November 4, 2012, Ferguson filed a response to this statement, notifying the Court that

8    the *Beech* decision had been reported and subsequently cited to by one case.  Dkt. No. 40.  In her

9    filed statement, Ferguson also included argument and citations to other cases, which the Court does

10   not consider because briefing has closed and the matter was already submitted to the Court.

11   *Beech*, nonetheless, is instructive.  The Fifth Circuit held that the employer was not

12   vicariously liable for the conduct of a crew member who brought a gun onto the ship that later

13   misfired, leading to the death of another crew member.  *Beech*, 691 F.3d at 577.  *Beech* explained its

14   holding as follows: "Some conduct that is consistent with a very broad and flexible job duty will

15   nevertheless be so contrary to the employer's business interests, so unforeseeable by the employer,

16   and so far removed from the employee's role as employee as to be outside the course and scope of

17   employment.  Even construing the course and scope of Cosenza's job duties very liberally, his

18   handling of a loaded firearm in the vessel's break room fell outside the course and scope of his

19   employment."  *Id.*  The Court agrees with this reasoning and it aptly applies to Tretyak's conduct,

20   leading to the Court's decision to find that Horizon is not vicariously liable as a matter of law.  It

21   would be improper to attribute to Horizon the costs "of a deliberate, independently motivated sexual

22   battery" that is unconnected to the company's operations.  *See Lisa M.*, 12 Cal.4th at 302.  In other

23   words, the connection is "too attenuated" to result in Ferguson's damages being allocated to Horizon

24   as a cost of doing business.  *Id.* at 304-05.  ("For reasons already discussed, we conclude the

25   connection between Tripoli's employment duties — to conduct a diagnostic examination — and his

26   independent commission of a deliberate sexual assault was too attenuated, without proof of

27   Hospital's negligence, to support allocation of plaintiff's losses to Hospital as a cost of doing

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

9

1    business."). Thus, Horizon's Motion with respect to Ferguson's vicarious liability claim is

2    GRANTED.

3                                   **V. CONCLUSION**

4           Ferguson's Opposition also includes several arguments that are disjointed from her

5    Complaint, as well as Horizon's Motion, and are tenuous at best. For instance, she appears to argue

6    that Horizon is liable for failing to enforce its alcohol policies. Opp. at 11. As part of this argument,

7    Ferguson first reasserts that "maritime law is applicable not the California law cited by Defendant."

8    *Id.* Then, in direct contradiction to her previous sentence, Ferguson cites to an unpublished Ninth

9    Circuit decision that used California law — not maritime law — when conducting a vicarious

10   liability analysis. *Avitia v. United States*, 24 Fed. App'x 771, 773 (9th Cir. Dec. 14, 2001) (holding

11   that the hospital employer could not be vicariously liable under California law for its doctor's

12   intentional sexual assault, but was vicariously liable for its employees' negligence in failing to abide

13   by the hospital's chaperone policy). First, this Court cannot consider the *Avitia* case since Ninth

14   Circuit Rule 36-3(c) prohibits any citations to unpublished decisions issued before 2007. Second,

15   the Court finds that it would be improper to permit Ferguson to introduce this new theory of liability

16   for the first time on summary judgment. Her Complaint against Horizon alleges that the company is

17   vicariously liable for Tretyak's conduct based on maritime law. Compl ¶ 5 ("Defendant Horizon, as

18   employer of Defendant Tretyak, is liable for the conduct of Defendant Tretyak under the general

19   maritime law."). The Court has already explained why maritime law does not afford Ferguson any

20   relief on this vicarious liability issue. Ferguson's Complaint also attempts to hold Horizon

21   accountable directly through a negligent hiring claim. Compl. ¶ 28. The Court has also explained

22   why this claim cannot withstand summary judgment. No other type of negligence allegations were

23   asserted by Ferguson in her Complaint, either against Horizon or Tretyak.[4] And Ferguson's attempt

24   _____

25          [4] Ferguson's responses to Horizon's interrogatories also confirm that this current argument
     falls outside the scope of her allegations in the Complaint. Ferguson summarizes her negligence
26   hiring claim against Horizon as follows: "Horizon's choice to hire Tretyak as a crewmember on the
     M/V Horizon Enterprise resulted from either (1) Horizon's failure to adequately screen Tretyak for a
27   propensity for sexual harassment and violence, or (2) Horizon's determination to hire Tretyak

28

1  to attach liability against Horizon under this new theory cannot be permitted at this late stage of the

2  proceedings.  For the same reason, to the extent that Ferguson attempts to now attach liability on

3  Horizon for violating United States Coast Guard regulations, the Code of Federal Regulations, or the

4  Maritime Security Act, those attempts are also improper.  Again, such allegations have never been

5  previously asserted by Ferguson.

6      For the foregoing reasons, Horizon's Motion for Summary Judgment is GRANTED in its

7  entirety.

8      **IT IS SO ORDERED.**

9

10  Dated: November 14, 2012                                    _____

11                                                               Maria-Elena James
                                                                 Chief United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25  despite evidence of a propensity for sexual harassment and violence.  Tretyak also admitted that he

26  had a history of flirting with female employees at the port of Oakland during arbitration.  This
     history proves that Horizon knew or should have know of Tretyak's proclivities." Essick Decl., Ex.

27  N at 3-4.  In her other interrogatory responses, Ferguson does not allude to any other negligence
     claims she may have against either Horizon or Tretyak.

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**